**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **LORI ANNE COLEMAN,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    Case No. 19-cv-830-STE |
| | ) |
| **ANDREW SAUL,** | ) |
| **Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
|     **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**I.  PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for disability insurance benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision on June 17, 2016. (TR.

11-19). The Appeals Council denied Plaintiff's request for review,[1] and Ms. Coleman filed an appeal in federal court. (TR. 991-997). The court reversed the decision and remanded the matter because the ALJ did not properly consider the opinion of Dr. Henry S. Urbank, Jr., M.D.,[2] who provided testimony at the request of the agency. (TR. 999-1005).

Following a second administrative hearing, the ALJ issued another unfavorable decision, and Ms. Coleman filed an appeal in this Court seeking a review of that decision. See TR. 901-915; ECF No. 1.

## II.   THE SECOND ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from November 2, 2013, her alleged onset date, through December 31, 2018, the date she was last insured. (TR. 904). At step two, the ALJ determined that Ms. Coleman had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, moderate patellofemoral chondrosis of her bilateral knees, and osteoarthritis of her bilateral hips. (TR. 904). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 906).

---

[1] (TR. 1-5).

[2] The parties and ALJ utilize different spellings of the medical expert's name. The Court adopts the spelling from the Curricula Vitae contained in the record. (TR. 879).

At step four, the ALJ concluded that Ms. Coleman retained the residual functional capacity (RFC) to perform light work with the following limitations:

> [Plaintiff] could lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently. [Plaintiff] could sit for a total of six hours out of eight hours and stand or walk for a total of six hours out of eight hours. However, [Plaintiff] could stand or walk up to 30 minutes at a time and sit up to 30 minutes at a time, with all changes of position happening at the workstation without taking a break. Further, [Plaintiff] never could climb ladders, ropes, or scaffolds, but occasionally could climb stairs, balance, stoop, kneel, crouch, and crawl. Finally, [Plaintiff] could frequently reach.

(TR. 906). As a result, the ALJ concluded Plaintiff was capable of performing her past relevant work after consulting with a vocational expert (VE). (TR. 914). Thus, the ALJ found Plaintiff was not disabled. (TR. 915).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence standard," a court looks to an existing administrative record to determine whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh

the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUE PRESENTED

On appeal, Ms. Coleman alleges the ALJ erred in the consideration of the opinions of Dr. Urbank and Dr. Chaudry. (ECF No. 19:13-24).

## V. ANALYSIS

### A. Relevant Law

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 404.1527(c). In determining what weight to accord any medical opinion, an ALJ must consider:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship;

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) the consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Hamlin*, 365 F.3d at 1215, n.7; 20 C.F.R. § 404.1527(c). Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). And if the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### B.     The ALJ's Consideration of Dr. Urbank's Opinion

At the April 4, 2016 hearing, medical expert Dr. Urbank elicited testimony from Plaintiff that she took fentanyl, oxycodone, and gabapentin at the time she was let go from her job on November 1, 2013. (TR. 34). Dr. Urbank testified that Plaintiff "takes way too much medicine" and that he "wouldn't have [Plaintiff] drive [his] children around taking all those pills." (TR. 37). He also testified: "I wouldn't have [Plaintiff] work based on her - - her pain treatment. She takes way too much medicine. . . . I don't know anybody who takes what she's taking and functions coherently or drives safely." (TR. 39).

The ALJ gave little weight to Dr. Urbank's opinion that Plaintiff's medications limited her ability to function coherently or drive safely. (TR. 911). Specifically, the ALJ found:

> Little weight is given to this opinion because it does not given [sic] any specific function-by-function work limitations. Further, while this opinion indicates that [Plaintiff's] medications affect her ability to function, and thus, would cause her [to] be off task, this opinion [is] inconsistent with treatment notes. Specifically, treatment notes consistently indicate that [Plaintiff's] pain was controlled with medications. In fact, it was often noted that with her pain medications, [Plaintiff's] pain was reduced to a four out of 10, which allowed her to work and do everything she needed to do.

5

> Moreover, while at times, [Plaintiff] reported having drowsiness as a side effect to her medications; on many occasions, [Plaintiff] reported that she did not have any side effects to her medications. Finally, this opinion is inconsistent with [Plaintiff's] own testimony that she is able to teach two to three hour long sewing classes.

(TR. 911 (internal citations omitted)).

### C. The ALJ Erred in Weighing Dr. Urbank's Opinion

Ms. Coleman alleges the ALJ's reasons for giving little weight to Dr. Urbank's opinion—because it was inconsistent with the treatment notes, inconsistent with Plaintiff's ability to teach a sewing class, and it did not give specific function-by-function work limitations—were not properly considered. Thus, she argues the ALJ did not provide legitimate reasons and remand is required. The Court agrees.

### 1. Selective Treatment of the Medical Record

In support of her evaluation, the ALJ cited medical records from Dr. Andrea Fraley, M.D., indicating Plaintiff rated her pain a four on a ten-point scale with pain medications, "which allowed her to work and do everything she needed to do." (TR. 911). Ms. Coleman asserts the ALJ "effectively disregarded" portions of her treatment notes which conflict with this evidence. (ECF No. 19:16). Specifically, Plaintiff cites portions of Dr. Fraley's records which reflect:

- Plaintiff reported she did not get adequate pain control and she missed work (TR. 433);

- Plaintiff rated her pain at higher levels (between four-to-five and six-to-seven) (TR. 454, 465, 487, 498, 511-512, 524, 597, 665, 675, 690, 740); and

- Plaintiff reported she had not worked since November 2013 (TR. 690, 703, 740).

While the ALJ summarized Dr. Fraley's records earlier in the opinion, she did not note Plaintiff's reports of greater pain or reports in the medical record reflecting she had not worked since the alleged onset date.[3] Instead, the ALJ repeatedly referenced that Plaintiff's pain was reduced to a four out of ten with pain medications, which allowed her to work. (TR. 908-909).

The ALJ's analysis in the second decision is similar to her deficient analysis from the first decision. There, the district court's order reviewing the ALJ's prior decision stated:

> [T]he ALJ appears to have rejected Dr. Urbank's opinion based on notations in the record that Plaintiff's pain medications reduced her pain to a "4/10" and "allows her to work and do everything she needs to do." Notably, it is not entirely clear from this language whether the physician meant Plaintiff could work and perform daily activities because of a pain reduction, or despite her pain medication. The ALJ obviously interpreted as the latter, but in doing so, seemingly relied on boilerplate language while ignoring conflicting medical evidence. For example, Plaintiff's pain management physician from 2012 to mid-2015, made the identical "functional status" assessment in every single treatment note, finding: "With the pain medications, [Plaintiff's] pain is reduced to a 4/10. This allows her to work and do everything she needs to do." The ALJ relied on this never-changing language despite that many of these records pre-date Plaintiff's alleged onset date, and, more importantly, the "functional status" language frequently conflicted with the same physician's notations about Plaintiff's pain complaints, ability to remain working, and reporting of much higher pain assessments.

(TR. 1003-1004 (internal citations omitted)). The court then noted that an ALJ must consider all evidence in the record and cannot pick-and-choose among medical reports. (TR. 1004 (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012))).

---

[3] The ALJ noted one instance where Plaintiff had increased pain with extension in her cervical spine, TR. 909, but she did not note the continuous reports of greater pain identified above.

Procedurally, the ALJ's analysis in the second decision amounts to error because she failed to "conform [her] further proceedings in the case to the principles set forth in the judicial decision" and the issue was explicitly decided by the district court. *Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009) (addressing the law-of-the-case doctrine).[4] More fundamentally, it amounts to error because "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (noting an ALJ must "discuss . . . significantly probative evidence [she] rejects").

Ms. Coleman also contends the ALJ's analysis is inconsistent with records from Dr. John Nelson (ECF No. 19:17). Dr. Nelson treated Plaintiff from February 2017 through May 2018. (TR. 1318-1421). Throughout the record, Dr. Nelson noted Plaintiff's pain was constant and was between three and five at rest and between five and eight with activity. (TR. 1318-1421). Dr. Nelson also often noted Plaintiff's activities of daily living were limited, paresthesia in Plaintiff's feet, and joint swelling and weakness in Plaintiff's back, hips, and knees. (1318-1413). The ALJ only referenced Dr. Nelson's records on one occasion, noting that Plaintiff "continued to be treated with Methadone for pain through May 2018." (TR.

---

[4] In the first decision, the ALJ found Dr. Urbank's opinion was consistent with the objective medical record. (TR. 978). In the opinion at issue here, the ALJ found Dr. Urbank's opinion was inconsistent with treatment notes. (TR. 911). Plaintiff addresses these seemingly inconsistent findings and insinuates wrongdoing. (ECF No. 19:16, n.5). But, the law-of-the-case doctrine does not require the ALJ to make the same analysis where the district court did not explicitly or implicitly adopt the finding. *See Poppa*, 569 F.3d at 1171.

8

910). The information from Dr. Nelson's records is the type the ALJ relied on in weighing Dr. Urbank's opinion, but it is more favorable to Plaintiff. On remand, the ALJ should address the portions of Dr. Nelson's reports containing probative evidence regarding Plaintiff's impairments.[5]

The Commissioner argues that Plaintiff's argument "is essentially an argument that the ALJ could have weighed the evidence differently." (ECF No 25:7). While this reasoning applies to some of Plaintiff's arguments,[6] the Court does not reverse because the ALJ could or should have weighed the evidence differently. Instead, the Court reverses because the ALJ picked and chose through the record, addressing evidence more favorable to her position. On remand, the ALJ is free to weigh the evidence consistent with the proper standard, but she must properly consider the evidence as outlined in this order.[7]

---

[5] Plaintiff also contends the ALJ disregarded portions of records from Dr. Blake Kelly, M.D., from June 2015 through January 2017, which noted higher pain levels and only thirty percent improvement. (ECF No. 19:16). But the cited records reflect that Plaintiff's pain was generally improving (or staying the same) and the ALJ's notations that Plaintiff's pain was nearly controlled are corroborated. (TR. 812, 819, 823, 827, 835, 843, 1242, 1245, 1249, 1263, 1266, 1269, 1273, 1276, 1280, 1284). Thus, the Court finds the ALJ did not err in addressing Dr. Kelly's records.

[6] Plaintiff also argues that the ALJ should have discussed that Dr. Urbank's opinion was consistent with the observations of her former coworker and supervisor and that Dr. Urbank was a board certified orthopedic surgeon and "was likely better qualified to address the impact of long term narcotic medication usage than Dr. Krishnamurthi, an internal medicine and cardiology physician." (ECF No. 19:17, 19). This amounts to a request to reweigh the evidence, which the Court cannot do. *Vigil*, 805 F.3d at 1201.

[7] Ms. Coleman also takes issue with the ALJ's consideration of records regarding her medication side effects. The ALJ noted that "on many occasions" Plaintiff reported no side effects to medication, but "at times" she reported drowsiness as a result of taking the medications. (TR. 911). This evidence is pertinent because it reflects the consistency between Dr. Urbank's opinion and the record as a whole. But, while the ALJ's statement makes it seem as if Plaintiff's reports

## 2. Ms. Coleman's Teaching Activities

The ALJ considered Plaintiff's testimony that she taught sewing classes which lasted for two-to-three hours at a time in support of her decision to give little weight to Dr. Urbank's opinion. (TR. 907-908, 911). Plaintiff argues "the ALJ provided a less than complete account" of Plaintiff's testimony. (ECF No. 19:18). Plaintiff testified she taught three-to-four sewing classes per month lasting between two-to-three hours. (TR. 955). Plaintiff stated that during the classes she is "able to move around," she is "not sitting and focusing at all," she explains to a student at the sewing machine how to do something an "then [she] is able to walk away." (TR. 955-956). She noted that she has had to miss classes on two occasions and reschedule the conclusion of at least six additional classes due to pain. (TR. 956-957).

Where a claimant argued the ALJ ignored qualifications and limitations with regard to his daily activities, the Tenth Circuit stated: "We have criticized this form of selective and misleading evidentiary review, holding that an ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations." *Sitsler v. Astrue*, 410 F. App'x 112, 117 (10th Cir. 2011). Here, the ALJ did not address Plaintiff's testimony regarding the level of focus she required to perform the task. The ALJ found that Dr. Urbank essentially opined that Plaintiff's medication regimen would cause her to be off task. This is relevant because the ALJ equated Dr. Urbank's opinion to Plaintiff being off

---

of drowsiness were but infrequent reports, Plaintiff cites seventeen occasions in which she reported no side effects while citing nineteen records on which she reported drowsiness. (ECF No. 19:18). While the Court's decision to remand is not based on this word choice, it may be prudent for the ALJ to be more cautious regarding how she represents this evidence on remand.

task while on her pain medication. It was error for the ALJ to selectively address Plaintiff's testimony.

### 3. The Lack of Specific Function-by-Function Limitations

The only remaining reason offered by the ALJ for the weight given to Dr. Urbank's decision is that the opinion did not include any function-by-function limitations. (TR. 911). Ms. Coleman contends this finding is not consistent with the ALJ's "own apparent concession that an inability to function coherently was the equivalent of being off task, or with the Court's similar previous finding equating that limitation with deficits in concentration and pace." (ECF No. 19:15). The Commissioner argues Plaintiff does not present a "fair characterization of the ALJ's analysis, which reasonably noted that Dr. [Urbank's] testimony did not detail *specific* functional limitations." (ECF No. 25:8).

In analyzing the first decision, the district court found that "[w]hile [Dr. Urbank] certainly did not describe specific functional limitations, he clearly expressed his medical opinion that a person taking Plaintiff's medications would not function coherently." (TR. 1002). Thus, the ALJ's finding that Dr. Urbank's opinion did not give any specific function-by-function work limitations is correct.

Whether an opinion provides function-by-function work limitations is not part of the list of factors an ALJ should consider when weighing the opinion. *Hamlin*, 365 F.3d at 1215, n.7; *see also McGehee v. Saul*, No. CV 18-1164 KK, 2019 WL 6219507, at *8 (D.N.M. Nov. 21, 2019) ("The duty to perform a function-by-function assessment belongs to the ALJ, not the medical source, and whether a medical source has provided function-

by-function opinions is *not* one of the factors ALJs must consider in weighing that source's opinions."). Courts, however, have allowed ALJs to consider it when weighing opinions. *See Kristen R. v. Saul*, No. CV 19-1089-JWL, 2020 WL 1433486, at *8 (D. Kan. Mar. 24, 2020)("[T]he ALJ has the responsibility to weigh medical opinions, and whether that opinion explains the functional limitations resulting from a claimant's impairments is a factor tending to support or contradict the medical opinion and may be considered and relied upon by the ALJ.") (internal quotation omitted). But in such cases, the ALJ also provided other legitimate factors for the weight assigned to an opinion. *See Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) (where the ALJ considered an opinion vague and conclusory because it was not based on a function-by-function analysis, but also found the opinion was not supported by other medical evidence or the opinions of three other doctors); *Kristen R.*, 2020 WL 1433486, at *7 (where the ALJ also found the doctor's opinion was inconsistent with another doctor's examination, contained no explanation for the limitations expressed, the treatment notes did not contain symptom observations or examinations, and the opinion did not explain how the limitations would apply in a work setting).

Without other legitimate reasons, the lack of specific function-by-function limitations is not a sufficient reason for rejecting Dr. Urbank's opinion. Further, the Court notes that the ALJ did not consider the opinion vague. Indeed, the ALJ was able to derive a specific limitation from Dr. Urbank's opinion—that Plaintiff would be "off task." (TR. 911).

### D. Dr. Chaudry's Opinion

The Court declines consideration of whether the ALJ erred in her consideration of Dr. Chaudry's opinion because the resolution of such issues may be affected following the remand for proper consideration of the evidence related to the opinions from medical providers. *See Watkins*, 350 F.3d at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). Specifically, part of the ALJ's reasoning for giving partial weight to Dr. Chaudry's opinion was that "with her pain medications, [Plaintiff's] pain was reduced to a four out of 10, which allowed her to work and do everything she needed to do." (TR. 912). As noted above, the ALJ erred in considering Dr. Fraley's records, where the notation originates.

### ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on July 29, 2020.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE